**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| JEFFERY DALE GETER, | :: | CIVIL ACTION NO. |
| Inmate # 684922, | :: | 2:04-CV-0153-RWS |
|    Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| TONY TURPIN, et al., | :: | PRISONER CIVIL RIGHTS |
|    Defendants. | :: | 42 U.S.C. § 1983 |

## ORDER AND OPINION

Now before the Court are Defendants' Motion for Summary Judgment [Doc. 45], converted from their Motion to Dismiss [see Doc. 61]; Plaintiff's Brief in Response with supporting exhibits [Doc. 49], Declaration of Jeffery Geter [Doc. 51], and Witness Statement of Yancey J. Stanley [Doc. 62]; and Defendants' Reply Brief [Doc. 55].

### I. BACKGROUND

**A.**   **Plaintiff's complaint**

In his complaint, filed on August 16, 2004, Plaintiff presented the following allegations. On September 29, 2002, during the 4:00 p.m. inmate count at Lee Arrendale State Prison in Alto, Georgia, prison guards "Alleyne Lennox"[1] and

---

[1] This guard's actual name is Lennox Alleyne. [See Doc. 49 attach. at 33.] However, despite Plaintiff's having been represented by counsel since November 26, 2004, [see Doc. 12], Plaintiff has been unable as yet to effect service of process upon

Edward Hopper attacked Plaintiff during the course of a dispute over prisoner access to a television. [Doc. 1 ¶ IV.] Officer Alleyne struck Plaintiff in the mouth, knocking out two teeth from his upper dental plate. Plaintiff then took a swing at Officer Alleyne, but missed, at which point Officer Hopper approached Plaintiff from behind and pulled his legs out from under him, while Officer Alleyne pushed Plaintiff down and drove his knees into Plaintiff's left hip, forcing Plaintiff's right hip into the floor and fracturing it. [Id. ¶ IV & attach. at 2.]

Two other officers, Sean Maher and Michael Mullis, then escorted Plaintiff to the medical unit (S.M.U.), but declined Plaintiff's request for a wheelchair, so that Plaintiff, without assistance, hopped uphill and then crawled up two and one-half flights of stairs to his S.M.U. cell. Nurse Glen McGregor examined Plaintiff but denied his request for pain medication and told him that x-rays were not available on Sunday. Nurse McGregor told Plaintiff that he would see Dr. Bobby Crocker the next day, Monday, September 30, 2002, but Plaintiff saw no doctor that day. On Monday evening, Nurse Cindy Chunly called Dr. Crocker "and told him" that Plaintiff was unable to get out of bed and had urinated on himself. Finally, on Tuesday morning, October 1, 2002, at around 11:00 a.m., Nurse Terry took Plaintiff to Medical Section,

---

Defendant Alleyne. [See Docs. 56, 57.]

where he saw Dr. Crocker. Plaintiff was taken by ambulance to the hospital that same afternoon, where he remained for five days, during which time he had hip surgery, and a pin and bolts were placed in his hip. [Id. attach. at 2-4.]

However, when Plaintiff complained about the pain that the appliances in his hip were causing him, some five months before they were due to be removed in October 2003, Dr. Crocker failed to increase his pain medication or to place him in the infirmary, even when a bed became available. Plaintiff remained in the S.M.U., where he did not receive proper medical treatment. [Id. at 4-5.] Major Mike Ostrander told Plaintiff's prison counselor that he was not going to place into Plaintiff's file certain witness statements from prison officials that were supportive of Plaintiff's claims. [Id. at 6.] Plaintiff named the seven aforementioned prison officials as Defendants, as well as Warden Tony Turpin, Warden of Care David Gibbs, and Warden Designee Donna Wilson. [Id. ¶ III.] By way of relief, Plaintiff requested, inter alia, $4 million in damages and a larger infirmary. [Id. ¶ V.]

**B.     Plaintiff's inmate grievances**

Plaintiff attached to his complaint two inmate grievances that he had filed. In Grievance # 0508-02-0650, dated October 23, 2002, Plaintiff stated that Officer Lennox had used excessive force against him and that "the officer and medical

3

officials" in the S.M.U. had been deliberately indifferent to his serious medical needs. Plaintiff stated that Officer Lennox had "busted" his mouth open and broken his hip, and that Plaintiff had then walked to S.M.U. with a broken hip and had crawled up three sets of stairs to his cell, where he was unable to get out of bed to eat or use the bathroom. [Doc. 1 attach.; see Doc. 45 Ex. 1 (Draper Aff.) Ex. A.] Warden Designee Donna Wilson informed Plaintiff that the incident had been "forwarded to the North Region Office for review and possible referral to Internal Affairs for investigation." [Id.]

In Grievance # 0508-03-1111, dated October 4, 2003, Plaintiff stated that he needed to be placed on the hospital floor of the prison because of his hip injury. [Doc. 1 attach.; see Draper Aff. Ex. B.] Donna Wilson found no basis for the grievance because Plaintiff was receiving "follow up care for [his] broken hip and complaints of pain," and his situation did not warrant placement in the infirmary. [Id.]

### C. Plaintiff's initial disclosures

In his initial disclosures, Plaintiff specified the following bases for relief: (1) Officers Lennox and Hopper are liable for assault and excessive use of force; (2) Officer Hopper is also liable for "failure to act, deliberate indifference, [and] due

4

process"; (3) Nurse McGregor is liable for deliberate indifference to his serious medical needs; (4) Major Ostrander "is liable for due process"; (5) Dr. Crocker is liable for the total deprivation of medical care from September 29 through October 1, 2002, and also for denying pain medication and not putting Plaintiff in the infirmary before his second surgery; (6) Officers Mullis and Maher are liable for failure to act and deliberate indifference; and (7) Donna Wilson is liable for "failure to act, due process, retaliation, [and] cruel and unusual punishment." [Doc. 9 attach.]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings and other documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the

5

inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). Morever, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant bears the initial burden of demonstrating that it is entitled to summary judgment. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). It may do so by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant has properly supported its motion, the non-movant must then "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in its favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted). See also Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "the non-moving party must come forward with *significant, probative evidence*") (emphasis added). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to

6

withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

A motion for summary judgment may be supported or opposed with "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Fed. R. Civ. P. 56(c). "As a general rule, the court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." Property Mgmt. & Inv., Inc. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985) (assuming without deciding "that authenticity and completeness are among the evidentiary requirements of Rule 56"). See also Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (stating that a court "may consider only . . . evidence [that] can be reduced to an admissible form," and noting that "evidence that is otherwise admissible may be accepted in an inadmissible form at [the] summary judgment stage"); Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000) (stating that Rule 56(e) "does not *require* that all supporting material be submitted in affidavit form," and stating further that a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits") (citation and internal quotations omitted).

### III.  CONTENTIONS OF THE PARTIES

A.  **Defendants' motion for summary judgment**

In the brief supporting their converted motion for summary judgment, the nine Defendants who have been served in this action argue that they should be dismissed because none of them is mentioned by name in the two inmate grievances that Plaintiff filed before bringing this action.  Accordingly, these nine Defendants claim that Plaintiff failed to exhaust his administrative remedies with respect to them, which is a prerequisite for his civil action against them.  [Doc. 45 Supp. Br. at 4-7.]

B.  **Plaintiff's response**

Plaintiff responds that the inmate grievances that Plaintiff filed are "sufficient to proceed against Lennox Alleyne . . . and Tony Turpin, under supervisor liability, whose name was not mentioned in the grievance, and the medical defendants, whose names are not mentioned."  [Doc. 49 Pl.'s Br. at 1-2.]  Plaintiff argues that the purpose of the administrative exhaustion requirement is not to give notice to potential individual defendants in a civil action, "but to give prison officials a chance to resolve the complaint without judicial intervention."  [Id. 2.]  Plaintiff asserts that there is no requirement that a prisoner provide, on his grievance form, the name of each prison official who might be at fault, because "prison officials will generally not grant or

8

deny grievances based solely on what the prisoner writes," but "will conduct an investigation, and in some cases a hearing, and will be able to ask the prisoner for necessary information that does not appear in the written grievance." [Id. 3.]

Plaintiff argues that an "exhaust per defendant" rule undermines important policy considerations "by freezing the prisoner's claims and theories of liability in place as of the uncounselled filing of a grievance within a few weeks of the challenged incident." [Id. at 4.] After detailing the extensive investigation that was conducted at the prison with respect to the altercation between Plaintiff and Officer Alleyne,[2] Plaintiff suggests that there is sufficient evidence of Alleyne's violent propensities to hold Warden Turpin liable as his supervisor. [Id. at 4-9.] Finally, Plaintiff argues that Defendants' failure to assert the exhaustion defense in their answer to his complaint constitutes a waiver of that defense, especially when no discovery was conducted on the issue. [Id. at 9.]

---

[2]The attachment to Plaintiff's response includes Witness Statements from Officers Alleyne, Hopper, Mullis, and Maher, other officers, and inmates regarding the altercation on September 29, 2002. [Doc. 49 attach. at 16-21, 25-29.] There is also a Use of Force Examination of Plaintiff's injuries prepared by Nurse McGregor on that same day. [Id. attach. at 23-24.]

9

### 1. **Plaintiff's declaration**

In his declaration, Plaintiff states that he is "level 3 mental health, with [an] 8th grade special ed[ucation] schooling." [Doc. 51 (Pl.'s Decl.) at 2.] Plaintiff asserts, with respect to each of the Defendants not named in his initial grievance, that he either did not know of that Defendant's involvement by name or did not know how to spell that Defendant's name, or both, until after he filed his grievance. [Id. at 1-5.] Plaintiff acknowledges, however, that he knew that Defendants Turpin, Gibbs, Crocker, McGregor, Hopper, Maher, and Mullis were involved from the very beginning. Plaintiff did not name Turpin, Crocker, Hopper, Maher, or Mullis in his grievance because he did not know how to spell their names, although he failed to name Maher and Mullis for another reason as well – he feared retaliation. [Id.] Specifically, Plaintiff states that he "learned it was Dr. Crocker when Mr. Glenn McGregor and Nurse Cindy Chunly told [Plaintiff] it was him," ostensibly on September 29 and 30, 2002. [Id. at 3; see Doc. 1 attach. at 3.] Plaintiff states that he did not know Nurse McGregor by name until after he filed his grievance. [Pl.'s Decl. at 5.]

### 2. **Witness statement**

In addition to his own declaration, Plaintiff has filed a "sworn" witness statement from Yancey Stanley alleging that "Officer Allyene Lenox" was forced to resign from Philips State Prison "for jumping on inmates" during his 2000-2001 employment there, and he was later fired or forced to resign from Lee Arrendale State Prison after allowing four inmates to enter the cell of a fifth inmate "so these inmates could stab" the fifth inmate. [Doc. 62.]

### C. **Defendants' reply**

Noting that this Court previously rejected Plaintiff's pro se attempt to add a claim against Defendant Turpin based on supervisory liability, [see Docs. 10, 32], Defendants argue that Defendant Turpin should be dismissed from this action. [Doc. 55 at 3.] Defendants also argue that (1) Defendant Ostrander should be dismissed because the allegations against him have nothing to do with Plaintiff's claims of excessive force and deliberate indifference to his serious medical needs, and (2) Defendant Wilson should be dismissed because Plaintiff never filed a grievance regarding her alleged collusion with Dr. Crocker in refusing Plaintiff a place in the infirmary, which she allegedly effectuated by denying Grievance # 0508-03-1111. [Id. at 5-7.]

11

Defendants reject Plaintiff's attempts to explain his failure to name them in his grievances as implausible or, at least, insufficient to meet the requirement that a prisoner must set forth in his grievances "as much relevant information about his claims, including the identity of those directly involved" as he reasonably can provide. [Id. at 4-5.] Based on the detailed description of the interaction between Plaintiff and Nurse McGregor immediately after Plaintiff's injury, as set forth in his complaint, Defendants deem it inexplicable that Plaintiff could not identify Nurse McGregor by name , or at least describe him adequately, in his grievances. [Id. at 7-8.] Defendants also note that, in their answer to Plaintiff's complaint, they did raise the defense that Plaintiff had failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a). [Id. at 9; see Doc. 33 at 5 ("Twentieth Defense").]

## IV.  DISCUSSION

### A.    The § 1997e(a) law of administrative exhaustion

"[N]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or

12

particular episodes, and whether they allege excessive force or some other wrong.' This provision entirely eliminates judicial discretion and instead mandates strict exhaustion, 'irrespective of the forms of relief sought and offered through administrative avenues.'" Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005) (citation omitted) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002), and Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)), cert. denied, 126 S. Ct. 2978 (2006).  Furthermore, there is no futility exception to this exhaustion requirement. See Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998) (stating that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement" of the Prison Litigation Reform Act of 1995, and "there is no longer discretion to waive the exhaustion requirement").

The controlling precedent for the issue herein is Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000).  In Brown, the Eleventh Circuit reversed the district court's dismissal, pursuant to 42 U.S.C. § 1997e(a), of a prisoner's § 1983 civil rights action against the warden of his prison and the Commissioner of the Georgia Department of Corrections, even though the prisoner had named neither defendant in any prison grievance. Id. at 1206.  The court stated:

13

> The question before us is whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed. We think that it does not. Instead, we conclude that while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that.
>
> Section 1997e(a) requires a prisoner to exhaust all "available" administrative remedies, and implicit in that requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses. But a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him. Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is "available" to the prisoner.

Id. at 1207-08. See id. at 1210 (holding "that 42 U.S.C. § 1997e(a) requires a prisoner to provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide").

The Eleventh Circuit distinguished the Sixth Circuit's holding in Hartsfield v. Vidor, 199 F.3d 305 (6th Cir. 1999), that § 1997e(a) barred a prisoner lawsuit against two defendants whom the prisoner had not named in any prison grievance, because "the plaintiff in Hartsfield knew the identity of those two defendants and could have

14

named them in a grievance." Brown, 212 F.3d at 1208 n.3. By that prisoner's own admission, "at the time an administrative grievance was or could have been filed, [he] actually knew the identity of the individuals directly responsible for his alleged injuries." Id. The Eleventh Circuit stated that this Sixth Circuit holding was "entirely consistent with the rule we adopt today, which does require a prisoner's administrative grievance to identify all who are known to have injured him and [requires the prisoner] to provide as much relevant information as reasonably possible in [his] administrative grievances." Id. The Court noted, however, that § 1997e(a) "does not require him to provide information he cannot reasonably obtain, nor does it require him to inform those who will pass on his grievance of the identity of the warden or prison commissioner." Id. at 1210.

**B.  Analysis**

Apparently, Plaintiff does not object to the dismissal of Defendants Wilson, Ostrander, Hopper, Maher, and Mullis from this action. [See Doc. 49 Supp. Br. at 1-2.] Plaintiff appears to admit that, aside from Officer Alleyne, only Warden Turpin and "the medical defendants," ostensibly Nurse McGregor, Dr. Crocker, and Warden of Care Gibbs, should remain as defendants in this action. [Id.] Nevertheless, it appears that Plaintiff knew Dr. Crocker's name, if not how to spell it, before he filed

15

his initial grievance, and, therefore, reasonably could have provided Dr. Crocker's name in each of his grievances, but failed to do so. Furthermore, even if Plaintiff did not know Nurse McGregor's name at the time he filed his grievances, it is apparent from his complaint that he knew enough about Nurse McGregor to be able to describe him and his actions in those grievances. Notwithstanding Plaintiff's allegedly limited mental abilities, therefore, he reasonably could have provided enough information in his inmate grievances to identify Nurse McGregor, but he failed to do so. It further appears that Plaintiff knew the names of Officers Hopper, Maher, and Mullis before he filed his initial grievance, but he also failed to mention their names. Moreover, the Court is not aware of any basis for allowing Plaintiff's claims to proceed against Defendants Ostrander and Wilson, who Plaintiff also did not name in his inmate grievances, for the obvious reason that they were not involved in any of the actions giving rise to those grievances in the first place. Plaintiff has not suggested otherwise in his response to the instant motion for summary judgment.

With respect to Warden Turpin, Plaintiff suggests that Officer Alleyne's prior mistreatment of inmates in the Georgia prison system was such that Warden Turpin may be held liable, as Alleyne's supervisor, for placing Alleyne in a position where he could continue to mistreat inmates. [See Doc. 49 Supp. Br. at 8-9]; Valdes v.

16

Crosby, 450 F.3d 1231, 1244 (11th Cir. 2006) (affirming the denial of summary judgment to a prison warden on qualified immunity grounds because the law is clearly established that a warden can be held liable for harm to a prisoner, which results from the use of excessive force by prison guards who are under the warden's ultimate supervision, if the warden fails "to take reasonable steps in the face of a history of widespread abuse or his adoption of custom or policies which result in deliberate indifference"). Plaintiff reasonably could not have been expected to know the facts supporting such an allegation at the time he filed his grievance against Officer Alleyne.

Moreover, as the Eleventh Circuit stated in Brown, § 1997e(a) does not include a requirement that a plaintiff identify a prison warden in his inmate grievance before naming the warden as a defendant in a civil action. See Brown, 212 F.3d at 1208-09 (noting that the plaintiff therein had sued the warden and commissioner "only because as high ranking prison officials they [were] in a position to identify the individuals who [were] actually and directly responsible for" the alleged constitutional violations). This rationale appears to excuse Plaintiff's failure to name Wardens Turpin and Gibbs in his inmate grievances.

17

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 45], converted from their Motion to Dismiss, is **GRANTED IN PART** and **DENIED IN PART**.  The following Defendants are **HEREBY DISMISSED** from this action, pursuant to 42 U.S.C. § 1997e(a), because Plaintiff failed to exhaust his administrative remedies with respect to each of them:  Dr. Bobby Crocker, Nurse Glen McGregor, Mike Ostrander, Donna Wilson, Edward Hopper, Sean Maher, and Mitchell Mullis.

**IT IS SO ORDERED**, this   6th   day of September, 2006.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)